IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | **CRIMINAL NUMBER:** |
| | : | **2:12-CR-00112-ER-2** |
| v. | | |
| | : | |
| NATALYA SHVETS | | |

## DEFENDANT NATALYA SHVETS' SENTENCING MEMORANDUM

## I.    INTRODUCTION:

On March 20, 2012 the defendant, and several other nurses and employees of

Home Care Hospice (HCH), was indicted and charged with conspiracy to commit

healthcare fraud in violation of 18 U.S.C. § 1349 and related substantive healthcare

fraud counts in violation of 18 U.S.C. § 1347. She was found guilty of these offenses

by a jury on March 25, 2014.

The offense conduct covered a four year period from mid-2005 to the end of

2008.

HCH was a company located in the far northeast section of Philadelphia in an

area with a large concentration of people of Russian and Ukranian ancestry. HCH

was a for profit company that provided home care hospice services for patients

1

including continuous care. Ms. Shvets was a part-time nurse who provided regular home care and some continuous care, and Medicare was billed for these services according to the level of care that HCH represented it provided to patients.

The offense conduct in this case involved continuous care billing for services that were not always provided.

The principals of HCH - Alex Pugman and Matthew Kolodesh - made millions of dollars that they were not entitled to which enabled them to live lavish lifestyles.

Ms. Shvets was paid $20.00 per hour for every hour of continuous care services documented by her. The jury's verdict reflects its finding that there were continuous care services submitted by the defendant that were not provided.

According to the government's calculations Ms. Shvets was paid over a four year period a total of $47,940.00, or less than $12,000.00 a year for these billings.

The defendant will be appearing before the Court on Tuesday, August 5, 2014 for sentencing.

## II.   PRESENTENCE INVESTIGATION REPORT (PSR) AND GUIDELINE CALCULATIONS:

In his PSR, U.S. Probation Officer Brett White has correctly calculated the loss for guidelines purposes that is attributable to Ms. Shvets by reason of the jury's verdict. Based on a calculated loss of $253,196.00 the total offense level under the

2

United States Sentencing Guidelines is 18. Because Ms. Shvets is in criminal history category I (no prior convictions or arrests) her advisory guideline range is 27-33 months incarceration.

## III.   OTHER SENTENCING CONSIDERATIONS IN THE PRESENT CASE:

As the Court knows, the Sentencing Reform Act, as modified by Booker,[1] contains an overarching provision that courts shall "impose a sentence sufficient, but not greater than is necessary," to comply with the goals of sentencing. 18 U.S.C. § 3553(a).

We understand that nothing we are now stating is new to the Court. However, for the record the evolution of sentencing reform in the aftermath of Booker provides the Court with much discretion in determining what sentence is appropriate in the present case. In the context of this sea change in sentencing law, we submit that the Court should exercise its discretion and impose a sentence in this case that does not include incarceration.

As this Court knows, the Supreme Court held in Booker that operation of the federal sentencing guidelines, when implemented in the manner prescribed in the Sentencing Reform Act, the Sentencing Commission's policy statements, and the Federal Rules of Criminal Procedure, violated a defendant's Sixth Amendment right

---

[1] U.S. v. Booker, 543 U.S. 220 (2005).

to a jury trial as interpreted in cases from <u>Apprendi v. New Jersey</u>, 530 U.S. 466 (2000) through <u>Blakely v. Washington</u>, 542 U.S. 296 (2004). To remedy this constitutional defect, the Court excised § 3553(b)(1) (the section which made the sentencing guidelines mandatory) from the Act, leaving the remainder of the statute (with the exception of the standard of appellate review set forth in § 3742(e)) intact, as well as the sentencing guidelines and policy statements. The Court held that applying a severability analysis to strike these two provisions was necessary to achieve as closely as possible the intent of Congress when it passed the statute.

After excising § 3553(b)(1) and § 3742(e) from the Act, the Court concluded that the remainder of the statutory scheme was constitutional under the Sixth Amendment. Accordingly, a district court at sentencing must still correctly calculate the base offense level and consult the relevant guidelines, 18 U.S.C. § 3553(a)(4); <u>United States v. Cooper</u>, 437 F.3d 324, 330 (3d Cir. 2006), but these rules are no more controlling of the final sentencing decision than any of the other multiple factors which must be "considered" under § 3553(a) as a whole. <u>United States v. Grier</u>, 475 F.3d 556, 571 (3d Cir. 2007) ("The Sentencing Reform Act mandates that the District Court 'consider' the factors of 18 U.S.C. § 3553(a)"); <u>United States v. Gunter</u>, 462 F.3d 237, 247 (3d Cir. 2006).

Based upon <u>Booker</u>, the Third Circuit has characterized the analytical

4

framework that should be used at sentencing as a three-step process:

> (1)    Courts must continue to calculate a defendant's Guideline sentence precisely as they would have before <u>Booker</u>.
>
> (2)    In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-<u>Booker</u> case law, which continues to have advisory force.
>
> (3)    Finally, they are required to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose      regardless whether it varies from the sentence calculated under the Guidelines.

<u>United States v. Gunter</u>, 462 F.3d 237, 247 (3rd Cir. 2006) (internal brackets, quotations, and citations omitted).[2]

In addition to listing the various sentencing considerations in sub-parts (a)(1) through (7), §3553(a) contains a preliminary directive already referenced above which states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." This is what is referred to as the "parsimony provision" and the Court stated in <u>Kimbrough v. United States</u>, 128 S.Ct. 558 (2007) that it is "overarching" in nature:

> The statute, as modified by <u>Booker</u>, contains an

---

[2] The validity of this framework was not affected by <u>Gall v. United States</u>, 128 S.Ct. 586 (2007). <u>United States v. Wise</u>, 515 F.3d 207, 216 (3d Cir. 2008). ("<u>Gall</u> reemphasizes the post-<u>Booker</u> sentencing structure set forth in the Court's precedent").

> overarching provision instructing district courts to 'impose
> a sentence sufficient, but not greater than necessary' to
> accomplish the goals of sentencing, including 'to reflect
> the seriousness of the offense,' 'to promote respect for the
> law,' 'to provide just punishment for the offense,' 'to
> afford adequate deterrence to criminal conduct,' and 'to
> protect the public from further crimes of the defendant.'

Id. at 570 (emphasis added). Based upon this language, the defense contends that the

parsimony provision now functions as the lens through which all sentences must be

evaluated at the district court level.

The First Circuit observed in United States v. Rodriguez, 527 F.3d 221 (1st Cir.

2008), Kimbrough makes it apparent that:

> Section 3553(a) is more than a laundry list of discrete
> sentencing factors; it is, rather, a tapestry of factors,
> through which runs the thread of an overarching principle.
> That tenet (sometimes referred to as the parsimony
> principle), instructs district courts to impose a sentence
> sufficient, but not greater than necessary to accomplish the
> goals of sentencing. This overarching principle necessarily
> informs a sentencing court's consideration of the entire
> constellation of section 3553(a) factors, including the need
> to avoid unwarranted disparity.    Similarly, judicial
> interpretation of section 3553(a) should be guided by the
> broadly worded goals of sentencing spelled out in section
> 3553(a)(2), to which Kimbrough pays homage.
>
> In the final analysis, then, the gloss supplied by Kimbrough
> signifies that a district court should not evaluate a request
> for a variant sentence piecemeal, examining each section
> 3553(a) factor in isolation, but should instead consider all
> the relevant factors as a group and strive to construct a

6

> sentence that is minimally sufficient to achieve the broad
> goals of sentencing. This inquiry should be guided by, but
> not made unflinchingly subservient to, the concerns
> expressed by the statute's various sub-parts.

Id. at 228 (internal quotations and citations omitted); see also United States v.

Foreman, 436 F.3d 638, 644 n.1 (6th Cir. 2006) ("a district court's mandate is to

impose 'a sentence sufficient, but not greater than necessary, to comply with the

purposes' of section 3553(a)(2)"); United States v. Martinez-Barragan, 545 F.3d 894,

904 (10th Cir. 2008) ("When crafting a sentence, the district court must be guided

by the 'parsimony principle'").

The nature and circumstances of the defendant's offense conduct is familiar to

the Court, from this trial and other related cases.

But it is the defendant's history and characteristics and her life's story that

bears special emphasis.

Other than the offense conduct in this case, it can safely be said that Natalya

Shvets lived an almost exemplary life.

Natalya Sheets was born in the Ukraine in 1970. Like many people of Jewish

descent she and her family were exposed to unrelenting discrimination and many

hardships.

The family history was characterized by many difficulties and often

7

unspeakable terror. Many family members of her grandparents' generation were killed on the front lines during World War II as Stalin sent waves of people to combat, often as human sacrifices, Hitler's invading forces; others - including her grandfather - were imprisoned in Russian gulags.

The defendant came to the United States in 1994 and with her family she settled in northeast Philadelphia.

She worked hard in search of a better life. She became a respected database operator for GlaxoSmithKline; a registered nurse, and obtained a real estate broker's license. She never married or had children; instead, she was according to friends and family a workaholic helping to support her parents and her brother and providing assistance when she could to other people that she cared about.

We have attached to this memorandum letters of support from family and friends. These letters reflect a central and persistent theme and that is that she has always been devoted to her family and friends and was selfless in helping people who reached out to her for assistance and comfort.

Her former sister-in-law Yelena Shvets, tells of how Natalya "gave up her personal life" when her mother was diagnosed with cancer. Other than working hard to earn money, according to Yelena Shvets, Natalya devoted all of her energy and time to taking care of her terminally ill mother. Thereafter, after Natalya's mother

8

passed away, Natalya took care of her terminally ill aunt and then experienced what was for her the devastating loss of her dog, all the while attempting to deal with the shame and pressure of her criminal case. Many of the letters also state all that Natalya has suffered in the aftermath of her arrest in this case. The financial statements speak for themselves. She is almost financially destitute at this time. She has lost her cherished job with GlaxoSmithKline and is now not able to pay her bills.

Her psychiatrist, Izabella Dyakovetsky, has also written to the Court. She notes that Ms. Shvets suffers from a major depressive disorder and anxiety. According to Dr. Dyakovetsky Ms. Shvets is undergoing pharmacotherapy, as well as psychotherapy.

Recognizing that this memorandum is being publicly filed, we will further address Ms. Shvets' medical/psychiatric problems at the time of sentencing.

## IV.  CONCLUSION:

This is a tough case. Despite the defendant's offense conduct in the present case, her history of hard work and sacrifice and devotion to others depicts a wonderful person.

Determining precisely what sentence is "sufficient, but not greater than necessary", in order to comply with the purpose of sentencing set forth in 18 U.S.C. § 3553(a) is rarely an easy task for any court. Striking the appropriate balance is

9

particularly difficult in a case like this one and is a decision best committed to Your

Honor's discretion.

Respectfully submitted,

Dennis Cogan

Honorable Judge Eduardo Robreno
17613 U.s. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge Robreno,

My name is Boris Shvets and I am Natalya's brother. I live in Philadelphia, Pennsylvania. Natalya and I grew up in a small town in the Ukraine and were born into a hard working family. From as early as our childhood, I remember Natalya always being the support of the family. She has always been very thoughtful, caring, and considerate. Natalya, as long as I can remember, has always tried to help her family, her friends, and her pets.

I can attribute many episodes where Natalya has shown great comfort and support. When I recently suffered a heart attack, she was the first person who was immediately at my side, who visited me in the hospital, and who offered to take on various outside chores that were necessary while I was debilitated. During this extremely difficult time, my sister was always available to provide a helping hand. She has always been there for me as well as for our family.

Natalya is my younger sister but has taught me many things through out the years. She has always been wise and sensible. In the last few years, Natalya has experienced many hardships in her life. We had to face and suffer through our father, mother, our aunt, and Natalya's precious dog passing. This was very difficult for the both of us but especially hard for Natalya as she has always been the strength in the family. She was at each one of their sides until the very end providing comfort any way that she could. At hard times such as the ones I mentioned above, Natalya continued to try to be the rock and help me get through the difficult times. Natalya loves people as well as animals. She had recently adopted a puppy after finding out that an owner was ill and giving the puppy to a shelter. Natalya is a good person and always willing to help and support. I can affirm that Natalya's goals have always been to help others. She has always placed the well being of others above her own.

I love my sister dearly and she is a very important source in my life. I know that Natalya is extremely distressed and it is very difficult to see her suffer. I kindly ask you to please take compassion and consider in your sentencing that Natalya is a wonderful and reliable individual.

Thank you for your time and consideration.

Respectfully,

Boris Shvets

Honorable Judge Eduardo Robreno
17613 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge Robreno,

My name is Yelena, I am Natalya's ex sister in law.

Knowing Natalya over 20 years, I sincerely believe that she is among the most compassionate
caring, and kind individuals that I know.
She has always been considerate of others and she places the well-being of friends and families
above her own.

I can cite many episodes where Natalya has been a great help and a source of comfort and
support.

When I immigrated to United States with my 4 years daughter she helped me morally and
financially despite the fact that she herself recently moved to the country worked 2 jobs and
more often then not was having financial difficulties herself.  She has been always there for me
whenever I needed her emotional, financial, or moral support.

Two years ago Natalya's mom was diagnosed with cancer. Natalya gave up on her personal life,
moved her mom in and devoted all her energy and time to taking care of her sick mother.  Soon
after Natalya's mom passed away, her aunt got terminally sick. She had no close relatives who
live in United State and again Natlya was there to lend a helping hand.  She spent all her free
time by her aunt's side once again providing support and care.

These are just some of many examples where Natlya was showing her kind and generous heart.
She has always gone above and beyond to show kindness for others.

It is, therefore, very difficult to hear of the legal troubles which she is lately struggling with.  I
know that she is very distressed and regretful over what has taken place and I strongly believe
that these unfortunate circumstances no matter their true nature  in no way exemplify the
typical behavior of the person that I have come to know over these many years. Her family and
friends love, respect, and care for Natlya deeply.  She is the source of great pride, support, and
importance in our lives.

Respectfully Yours,

Yelena Shvets.

Honorable Judge Eduardo Robreno
17613 U.s. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge Robreno,

I am Natalya's niece. I live in Montreal, Canada. I am 21 years old. I am a university student and I work with kids. I have known Natalya my entire life and have always only heard great things about her. Although I accept the existence of her sentencing, I have to admit I am completely taken aback. The last few years were very difficult for her. In less than two years, her mother (my great-aunt) passed away, her aunt (my grand-mother) passed away and her dog passed away as well. She has been grieving and grieving. I feel bad could not protect herself well enough but anyone who goes through so much pain in so little time is not able to assume such terrible accusations.

Natalya is a very kind, thoughtful, hard-working person. She gives more than she receives. She's not only family to me, but she is the friend I can count on no matter what. She comes from a very modest background. Our families survived the Holocaust and always taught us to be grateful from who we are, where we are and always help the ones that are in need. Natalya helped others without ever expecting to get anything in return. She helped even though sometimes, she's the one who needed help the most.

For years, Natalya has taken care of her mother. When her mother got ill, she was already working between two and three jobs. She barely ever had any time off. By the end, her mother moved in with her because Natalya wanted to be by her side and assist her the best way she could. She looked after her mother's well-being till the very end. Sometimes, I feel like her mother's death broke her because everything has been turning sour since then. And still, no matter how difficult her life is and how much injustice she comes across, Natalya always keeps her head high and looks for ways to be useful and helpful.

Natalya has also helped her brother with his home and his family. She has always supported them. She's helped raise and loved her brother's daughter like she was her own.

Never would she steal something or hurt somebody. That is not her nature. On the contrary, she would give all she has if she knew it would save or even help somebody. When my grandmother got ill with cancer, she spent days by her side. She made sure my grandmother was comfortable when my family and I were still in Canada and couldn't come to Philadelphia. She constantly called us and let us know of how everything was going. When I finally arrived in Philadelphia, she was there the entire time. My grandmother was getting worse and worse and it was scary to watch. My aunt was doing everything she could to keep her spirits up and make sure she was feeling okay. She cleaned, she took care of the medication, she organized all the documents, she made food, she did the groceries, she did more than I thought was humanly possible. My dad was in a terrible state. He was depressed and she kept him company, being supportive and caring. My grandmother's death was one of the saddest periods of my

life and I feel like I could never be thankful enough for all Natalya did for our family, for all the time and money she invested, just to make sure our heads were above water.

When my grandmother passed away, she organized the funeral because we couldn't. She did more to help than we could ever ask for. And no matter the big gestures, it's the little things that show a person's true loving intentions. My grandmother had many furniture that we had no idea what to do with. We could sell it or throw it away but Natalya did neither. She found very poor people living in my grandmother's building and offered them the furniture. She even helped them to move it. It was so touching to help people in need and I know my grandmother would have been proud of Natalya's actions.

Around one year ago, Natalya has started looking for a way to have a child of her own. I think she has always wanted to have kids. She's one of the most caring people I know. She was devastated when her dog died and I was devastated for Natalya because I knew how much she loved him and how much she has given to him. She took care of him like he was her kid. She was finally ready to start a family and the closest being to her passed away.

I still wish for her to be a mother one day because she would be the best mother. She is completely selfless and even through all the rough times, she never lets her anger or sadness affect others, because the others always come first. I really hope this sentence won't affect her future because she doesn't deserve such harshness. She deserves love and understanding, the same she has always shown to everyone around her. I am worried all this will leave her alone. Such events can definitely break people and breaking a good person who can still give so much to the world and is ready to invest all she has to make the world a better place is tragic. It is like shooting an angel.

Thank you for taking all this into account.

Respectfully yours,

Catherine Shvets



Danielle Cargen <danielle.coganlaw@gmail.com>

---

**FW:**
1 message

---

**Natalya Shvets** <shvetsn@hotmail.com>                                      Wed, Jun 18, 2014 at 2:51 PM
To: "danielle.coganlaw@gmail.com" <danielle.coganlaw@gmail.com>, Dennis Cogan <cogan2128@aol.com>

---

From: milanashvets@hotmail.com
To: shvetsn@hotmail.com
Subject:
Date: Wed, 18 Jun 2014 14:11:42 -0400

To the Honorable Judge,

      My name is Milana, Natalya's niece. I currently live in Philadelphia and attend Temple University in hopes to one day graduate with an Actuarial Science degree. My aunt Natalya has been one of the biggest support systems for my entire family since I can remember.  She was always the most supportive, and helpful family member. Natalya was the main reason that I got through many difficult times in my life, and for that I will forever be grateful.

      When I was five years old, my parents decided it was best to get a divorce. Although I was so young, the memories of how hard it was will forever be imbedded into my mind. When the divorce turned into a legal battle, I remember my aunt being by my side as a neutral party. She helped me understand the situation and why it was happening.

      My family experienced a very difficult time approximately two years ago when my grandmother got diagnosed with Cancer. My aunt being the caring woman she is, decided to take on the responsibility and care for my grandmother at her home full time. I cannot begin to imagine how difficult caring for someone so sick must have been but it ultimately shows how selfless Natalya is. Soon after my grandmother passed away, Natalya's dog also died. I have never seen a person go through so much so fast and still keep their head up and worry about everyone around her. Even though she was going through the most painful time in her life, she always made sure that my dad and I were had everything we needed.

      After seeing my aunt go through such a rough year, it was difficult for me to find out about the legal troubles that she has been going through. Although she seems strong, I can only imagine the pain and stress she is under right now. I am asking as her niece to please have compassion when sentencing Natalya. I love my aunt more than anything and she has always been my rock. Thank you for taking time to review this letter.


Respectfully,

Milana Shvets

---

Honorable Judge Eduardo Robreno
17613 U.S. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Dear Judge Robreno,

My name is Sofiya Gruber. I am a family friend of Natalya Shvets. I met her in 1988, when I began working as a teacher in Mogilev Podolskiy, in Ukraine. I was lucky enough to meet her mother who was also a teacher, and father, who was a hard-working man at a local factory. Natalya's family was known in our small town as one that was charitable and helped others, despite not being very wealthy. Because we lived in a tight knit community, it was easy to get to know each individual in it quite well. Everyone knew Natalya as someone who was always cheerful, kindhearted, and extremely generous to those who were struggling, just like her parents.

In 1989, there was a tragedy in my family. My father died of heart disease in the middle of the night. My mother was in the hospital, being prepared for a surgery. I was completely alone. Natalya heard of this and came to my home right away. She not only supported me through this difficult time, but also took me to her house so that I would not be by myself. She was not a relative, but during this time, she took care of me like only family would.

When I was getting married, she once again came to my aid. Natalya helped sew a wedding dress for me and helped me prepare for the ceremony. She was my bridesmaid. During the celebration what I remember most about her, is how she brought tons of people to their feet to dance. In short, she always was someone very positive and encouraging.

In 1997, I immigrated to the United States. On my hands I had a sick mother and small child. I hardly knew the language and didn't have money. Natalya found out that we had arrived here and after several days found us. She came and gave us clothes, a vacuum, and kitchenware. After work Natalya would come to our apartment. She drove me to the grocery store and helped with whatever she could. This meant so much to me. I know that Natalya truly has a big heart. She's selfless and doesn't expect anything in return. I have never been able to do anything for her, for the times she was there for me. She just wants to comfort those she cares about. Most importantly, throughout the years I have seen that she is capable of deeply empathizing with others. Not many people have that quality.

I know that over the past several years she has gone through a lot. She lost both of her parents, who were her only support system. As family has always meant everything to her, the death of her mother and father completely and utterly devastated her. It really saddens me to hear of all of her troubles.

Natalya has been a friend to me during times of grief as well as during times of happiness. I thank you for this opportunity to share my thoughts about her. And I would like to kindly ask you to please consider all of these things when sentencing her.

Sincerely,

Sofiya Gruber

June 19, 2014

To: Honorable Eduardo Robreno
17613 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

To the Honorable Judge Robreno,

      I would like to take an opportunity to offer a formal letter of support for Natalya Shvets. My name is Larisa Dubinsky and I haven been a close friend of Natalya's for almost twenty years. In 1995, we attended computer programming school together in Philadelphia, PA where we first met. Ever since, we have grown close and remained very good friends. In all of the years that I have known Natalya, I have depended on her good judgment, advice, help, and trustworthiness. She has been an honorable and reliable friend to me over the course of all of these years.

      I have had a number of experiences in which Natalya had been a great help to me as well as an important source of comfort and support. She is always there for me if and when I need her. She has babysat my daughter when I had to work or travel as well as provided support for my mother-in-law when she had fallen ill. Aside from times where I was in a bind or crisis, Natalya has also been there for me on the most basic of occasions. When I needed some help with my yard work, Natalya was there. When I needed a ride to the airport, Natalya was there. The number of occasions in which she has been there for me is truly countless. She is among the most reliable and kindest people that I know and I value her friendship tremendously. Having known her for many years, I can affirm that her goals have always been to help others and that she consistently places the well-being of friends above her own. Natalya has a tremendously good heart and has been such a positive presence in my life as well as many others.

      It was very difficult for me to hear about the recent legal troubles which had befallen Natalya. She has struggled considerably with these problems and, without a doubt, suffered greatly as a result of those occurrences. I know that she is very distressed and regretful over what has taken place. I am asking for the utmost compassion in sentencing Natalya to the crimes she has been found guilty of committing. Knowing her well, I can tell you that she is a wonderful person who has always been dependable, gracious, and generous. Thank you for reviewing my letter and considering the thoughts that I have laid out here.

Sincerely,

Larisa Dubinsky

[Who you are]

My name is Larisa Dubinsky of 141 Whitney Lane, Richboro, PA 18954

[Your relationship to the person charged]

I have known Natalya Shvets of 762 Bargate Ct Southampton PA 18955 for nineteen years. We used to go to computer programming school together.

[Your knowledge of the person's charges]

I understand that Natalya Shvets will be sentenced on June 25, 2014. She is very upset about the charge and I believe she is sorry for what has happened and her involvement.

[Your knowledge of what is going on in the person's life]

???

[Your opinion of the person's character]

I can say that in all the time I have known her, Natalya Shvets has been a decent, hardworking and trustworthy person. I know that she is very distressed and regretful over what has recently taken place.

To
Honorable Eduardo Robreno
17613 U.S. Courthouse 601 Market Street Philadelphia, Pennsylvania 19106

From
Bhanoji Malla
4 Langston Cir, Exton, PA 19341

Dear Judge Robreno,
I am a computer consultant working for more than 15 years. Before that I worked
as a full time employee for 6 years. I worked with Natalya at two clients 15 years
ago. I have been in contact with her since then. She is smart, hard working and a
good team player. It is not only my opinion but also the opinion I heard with the
client team. Personally she is a good person. When a dog needed shelter, she
adopted the dog and took care of the dog. When I was sick, she brought me lot of
food and cleaned the house. For all the good things she did in her personal life,
please consider that in sentencing. Thanks!

Respectfully Yours
Bhanoji Malla

Honorable Judge Eduardo Robreno
17613 U.s. Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106


Dear Judge Robreno.

My name is Daniel Yukhananov. I am very close family friend of Nataly Shvets. I am
small business owner in Philadelphia, PA. I have known Nataly since 1995. We have
meet in Computer school where we have become very good friends and have been friends
ever since. We have shared good and bad times together. In the recent year, Nataly had
lost practically her whole family while she has been emotionally distressed. He had lost
her Mother, very close and favorite aunt and her lovely dog. And it all happened within
one year.

Nataly is the person everyone want to be close to, very kind, descent person that will go
out of her own way to help others. She has over come a lot of obstacles in her life and I
was part of all of them. She had come to USA with nothing. She had studied over and
over to become a successful women of America. She had difficult in learning English
and she has succeeded. She became independent woman that honestly earn her living.

I am an owner of small restaurant and anytime I have family events and can't manage my
business, Nataly is the first person I would think to take over for me. Trusting her with
closing the night on her own and not worrying of any consequences the next day. I trust
Nataly with money, with my thought with my friendship  Having her in my life as a
friend that you can trust is very important. Not every person nor friend can be trusted
with your business and specially with your lively hood.

She is one of the most reliable and kind individuals that I know and I am proud to have
her as part of my family. Knowing her all these years, I can say that she
always been there to help others and that she places the well-being of friends and families
above her own. With her interactions with friends and her bother, she is very devoted to
her family.  Knowing her for over 19 years, I have never heard any one speak bad
thoughts of her. Nothing but kindness and trust from friends and family that surround
her. I am very proud to say NATALY SHVETS is my friend.

It was very difficult to hear of the legal troubles which befallen Nataly Shvets recently.
She has been struggling for the last two years while sitting back and waiting to hear what
will happen to her future. She has struggled considerably with these problems and is
without a doubt suffering greatly as a result of the occurrences. I know that she is very
distressed mentally and physically, regretful over what has taken place. Her friends and
family loves, respect and care for Nataly Shvets deeply.

Dear Judge Robreno, please consider my thought written above when sentencing my
dearest family friend. Thank you very much for your consideration.

Daniel Yukhananov                          6/09/2014



Danielle Cargen <danielle.coganlaw@gmail.com>

## FW: letter
1 message

**Natalya Shvets** <shvetsn@hotmail.com>                                     Mon, Jun 23, 2014 at 7:25 AM
To: danielle.coganlaw@gmail.com
Cc: cogan2128@aol.com

---

Date: Mon, 23 Jun 2014 02:02:39 +0000
From: svetaustayev@comcast.net
To: shvetsn@hotmail.com
Subject: letter


To Judge Robreno !

Dear Sir ! My name is Svetlana Ustayev. I am a friend of Natalia Shvets for about five
years. We met while working together in the nursing home on weekends. I would like to
say that Natalia is unbelievably hard working person , very reliable , responsible and a
good team player . Beeing an immigrant myself , I know how difficult it is to make it in the
new country . Everything Natalia has got she worked for very hard, nothing was given to
her. If needed she worked 8, 12 or 16 hrs(double shift) , and than go to the next job. I
have never seen anything like this. She is a loyal friend and if needed, she will take the
shirt of her back and give to you. Your Honor! I am asking You to take this in to
concideration when You make Your decision.

Thank You .

---

# Ψ Izabella Dyakovetsky, M.D.

Board Certified Psychiatrist

May 11, 2014

To Whom It May Concern:

Natalye Shvets has been under my care since 10/02/13. She suffers from major depressive disorder with anxiety. Currently, she is undergoing pharmacotherapy, in conjunction with psychotherapy. In my professional opinion, the patient needs to continue her pharmacotherapy treatment, and I also recommend weekly psychotherapy sessions in order to improve her symptoms of depression and anxiety.

If you have any questions or concerns please feel free to contact me. Thank you.

Best regards,

Izabella Dyakovetsky, M.D.

201 Lakeside Drive * Lakeside Medical Center * Southampton, PA 18966
Tel. (215) 322-9020* Fax (215) 322-9040

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of Defendant's

Sentencing Memorandum was electrically filed with the Clerk of the U.S. District

Court for the Eastern District of Pennsylvania and is available for viewing and

downloading from the ECF System upon the following:

Suzanne B. Ercole, Esquire
Assistant U.S. Attorney
615 Chestnut Street
Suite 1250
Philadelphia, Pennsylvania 19106

/s/ Dennis Cogan
DENNIS COGAN
2000 Market Street, Suite 2925
Philadelphia, Pa. 19103
215-545-2400
Identification No. 09874
Attorney for Defendant

DATE: July 31, 2014

11